USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GANG CHEN,

                Plaintiff,

-against-

CHINA GREEN AGRICULTURE INC., ZHUOYO LI, YONGCHENG YANG, DAQING ZHU, KABANI & COMPANY, INC., KSP GROUP, INC., ABDUL HAMID KABANI, and JASLYN HUYNH aka JASLYN SELLERS,

                Defendants.

1:20-cv-09232 (MKV)

**ORDER GRANTING MOTIONS TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Gang Chen bring this action against China Green Agriculture Inc. ("CGA"), Zhuoyu Li, Yong Cheng, Daqing Zhu, Kabani & Co, Inc. ("K&C"), Abdul Kabani, KSP Group, Inc. ("KSP") and Jaslyn Sellers for an alleged securities fraud scheme. Plaintiff's Amended Complaint [ECF No. 57] asserts claims for violations of Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiff additionally alleges violations of Sections 20(a), 15 U.S.C. § 78t(a); and 10A of the Exchange Act, 15 U.S.C. § 78j-1. All Defendants have moved to dismiss. For the reasons discussed herein, Defendants' motions are granted.

### BACKGROUND

    The following facts are drawn from Plaintiff's Amended Complaint and are assumed true "for the purposes of a motion to dismiss." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is an investor who purchased CGA stock between December 2016 and June 2020. Am. Compl. ¶ 6. CGA is a Nevada corporation that operates in China and is listed on the New York Stock Exchange. Am. Compl. ¶ 7. CGA "is engaged in research, development, manufacture,

1

and distribution of fertilizers and [a]griculture products." Am. Compl. ¶ 7. CGA operates through a variety of wholly-owned subsidiaries, including Beijing Gufeng Chemical Products Co., Ltd. ("Gufeng"). Am. Compl. ¶ 7. Gufeng accounts for, "on average," 45% of CGA's total income. Am. Compl. ¶ 8.

CGA is managed and controlled by Defendants Zhuoyu Li, Yongcheng Yang, and Daqing Zhu (together, the "Individual Defendants"). Am. Compl. ¶¶ 14-18. Li is the CEO and chairman of the Board of Directors, Yang is the CFO, and Zhu is the director and chairman of CGA's Audit Committee. Am. Compl. ¶¶ 14-18.

In 2008, CGA engaged Defendant K&C as its auditor. Am. Compl. ¶ 19. K&C is owned by Defendant Hamid Kabani. Am. Compl. ¶ 21. K&C worked as CGA's auditor until its resignation in April 2017. Am. Compl. ¶ 19. During that time, K&C worked on CGA's 2016 Annual Report and First Quarter 2017 Report. Am. Compl. ¶ 19. Defendant KSP Group, Inc. ("KSP") replaced K&C as CGA's auditor. Am. Compl. ¶ 20. Plaintiff contends that KSP is controlled by Defendant Kabani, Am. Compl. ¶ 20, though Defendant Jaslyn Sellers serves as KSP's Audit Director. Am. Compl. ¶ 22.[1]

Plaintiff urges that four alleged misrepresentations constitute grounds for the causes of action in his Amended Complaint. *See* Am. Compl. ¶ 61 (claiming he has "alleged sufficient facts to plausibly implicate four critical elements in CGA's financial statements [as] fraudulent."). *First*, Plaintiff argues that the Gufeng factory located in China is not as productive as it appears, and CGA's actual revenue must be correspondingly lower. *See* Am. Comp. ¶¶ 25, 42. *Second*, Plaintiff purports to show that the storage capacity of the Gufeng factory is not accurate, thus CGA's reported inventory must be inflated. Am. Compl. ¶¶ 43-47. *Third*,

---

[1] The Court collectively refers to Defendants K&C, KSP, Kabani, and Sellers as the "Auditor Defendants."

Plaintiff claims that CGA did not pay Chinese income tax, as required by Chinese law. *See* Am. Compl. ¶¶ 48-51. And, *fourth*, Plaintiff believes that CGA falsified its "cash and cash equivalents." Am. Compl. ¶ 53.

**Revenue.** Plaintiff asserts that he knows that the "[r]evenue recognition" in CGA's financial reports is inaccurate because he has counted the number of trucks that leave CGA's Gufeng facility in China. Am. Compl. ¶¶ 25-26. Plaintiffs contends that he has visited the facility three times, Am. Compl. ¶ 26, and that because he did not personally observe trucks leaving the facility, the amount of fertilizer sold by CGA and claimed in its annual reports must be false. *See* Am. Compl. ¶¶ 35-38. Citing to the 2019 Annual Report, Plaintiff calculates that CGA averages "about 341,374 metric tons" of fertilizer sold per year. Am. Compl. ¶ 36. Plaintiff then argues that to support the amount of shipping required to meet their stated sales, the Gufeng facility must have 75 trucks leaving a day. Am. Compl. ¶ 37. But when Plaintiff apparently visited, he only saw about two trucks a day. Am. Compl. ¶ 38. Plaintiff further contends that his belief that few trucks transit the facility is supported because the Gufeng facility has sealed one of its non-main gates. Am. Compl. ¶ 39. Plaintiff concludes that the lack of activity at the Gufeng facility means that the report, and the revenue reported within it, are wrong. Am. Compl. ¶ 42.

**Inventory.** Plaintiff alleges that CGA's stated inventory is "extremely unreasonable." Am. Compl. ¶ 44. Citing to CGA's 2017 Annual Report, Plaintiff calculates that CGA has "161,555 tons of inventory," which should occupy "161,555 cubic meters." Am. Compl. ¶ 45. Plaintiff then performs back-of-the-napkin math to show that the Gufeng facility's total storage space is only 12,000 square meters. Am. Compl. ¶ 46. But because "the warehouse itself from ground to the roof is less than 5 meters high," the Gufeng facility cannot store all of the

inventory CGA reports. Am. Compl. ¶ 46. Plaintiff contends that instead a building 13 meters high would be required. Am. Compl. ¶ 46. As a result, the Gufeng facility's "inventory does not even exist." Am. Compl. ¶ 47.

**Chinese Tax.** Plaintiff alleges that "to make all the fake income number[s] logically deceivable, Defendants have to forge related income tax paid in China." Am. Compl. ¶ 48. Plaintiff charges that his is part of a plot to "offset the deferred income tax or repatriated tax obligation to [the] IRS" and an attempt to steal money from the company. Am. Compl. ¶ 51. Plaintiff acknowledges that Chinese law apparently prohibits the disclosure of the amount of income tax paid in China, and concludes that CGA must therefore make up what it reports it pays in Chinese taxes. *See* Am. Compl. ¶ 51.

**Cash and Cash Equivalents.** Plaintiff then flatly states that though "CGA [reports] tremendous cash and cash equivalents . . . they [are] false and misleading because the reported cash simply did not even exist." Am. Compl. ¶ 54. In support, Plaintiff re-alleges that the revenue information is wrong, Am. Compl. ¶ 55, and charges that certain CGA private placements and stock splits amount to self-dealing. Am. Compl. ¶ 58.

\*   \*   \*

According to Plaintiff, all Defendants engaged in a concerted scheme to defraud investors. *See* Am. Compl. ¶ 24. Specifically, Plaintiff alleges that CGA and the other Defendants worked to file "materially fraudulent and misleading" annual and quarterly reports. Am. Compl. ¶ 24. Plaintiff claims that he relied on CGA's "fraudulent filings and [] financial reports," and as a result he has suffered a net loss of $1.25 million. Am. Compl. ¶ 6. Plaintiff initially filed suit in the Southern District of Florida. That court *sua sponte* transferred the matter to this Court under 28 U.S.C. § 1404(a). [ECF No. 34].

Pending before the Court are four separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed by separate groups of defendants. First, CGA filed its Motion to Dismiss [ECF No. 66], attaching its Memorandum of Law in Support [ECF No. 66-1, "CGA Mem."]. Plaintiff filed his opposition [ECF No. 69, "Pl. Opp. to CGA"], and CGA replied [ECF No. 74, "CGA Reply"]. Second, Defendants K&C and Kabani jointly filed a Motion to Dismiss [ECF No. 95, "Kabani Mem."], and Plaintiff opposed [ECF No. 105, "Pl. Opp. to Kabani"], after which Defendants K&C and Kibani filed their reply [ECF No. 109, "Kibani Reply"]. Third, Defendants KSP Group, Inc. and Sellers jointly moved to dismiss [ECF No. 102] and filed a Memorandum of Law in Support [ECF No. 103, "KSP Mem."], which Plaintiff opposed [ECF No. 106, "Pl. Opp to KSP"], and KSP and Sellers replied [ECF No. 110, "KSP Reply"]. *Fourth*, the Individual Defendants collectively moved to dismiss [ECF No. 107] and filed a Memorandum in Support [ECF No. 108, "Individual Defs. Mem."], which was opposed [ECF No. 111, "Pl. Reply to Individual Defs."], after which the Individual Defendants replied [ECF No. 112, "Individual Defs. Reply"]. All of the motions are now fully briefed and the Court addressees them collectively to evaluate whether Plaintiff states a claim upon which relief can be granted.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the

5

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

A plaintiff alleging securities fraud must also meet a heightened pleading standard. Under the Private Securities Litigation Reform Act (the "PSLRA") a plaintiff who alleges securities fraud predicated on misrepresentations or omissions of material fact must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA also requires that in any securities fraud action "the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive, manipulate or defraud.'" *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

A complaint filed by a *pro se* plaintiff "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (noting that courts are "required to afford [a *pro se* plaintiff] leniency, holding his complaint to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, the complaint must satisfy the *Twombly-Iqbal* plausibility standard. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80-81 (2d Cir. 2020). "[T]o survive a

6

Rule 12(b)(6) motion, a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Wightman–Cervantes v. ACLU*, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000)). "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); and *Hayden*, 180 F.3d at 54), as well as any document "upon which the complaint solely relies and which is integral to the complaint," *Roth*, 489 F.3d at 509 (emphasis and alteration omitted) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).

## **ANALYSIS**

Plaintiff asserts three causes of action.  First, Plaintiff alleges that CGA and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5.  Second, Plaintiff contends that the Individual Defendants additionally violated Section 20(a).  Finally, Plaintiff maintains that the Auditor Defendants and Daqing, chair of the CGA Audit Committee, violated Section 10A.  The Court notes that the Individual Defendants move for dismissal on the grounds of lack of personal jurisdiction.  Individual Defs. Mem. at 2-5.  Although this Court "traditionally treat[s] personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction

7

on the power . . . to address legal issues." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013). "[I]n cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action," the Court "may address first the facial challenge to the underlying cause of action and, if [] dismiss[ing] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp v. Camacho Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012). Because the Court finds that the Amended Complaint does not make out a claim for which relief can be granted, and dismisses the case in its entirety, it does not address the personal jurisdiction arguments.

I.  **THE AMENDED COMPLAINT DOES NOT MAKE OUT ALLEGE SCIENTER AS REQUIRED TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10B-5**

Plaintiff's Amended Complaint alleges that all Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5. Section 10(b) prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b), while SEC Rule 10b-5 creates liability for a person who makes "any untrue statement of a material fact or . . . omit[s] to state a material fact . . . in connection with the purchase or sale of any security." *In re OSG Secs. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013). "To state a claim under [Section] 10(b) and Rule 10b-5, plaintiff[] must allege that [defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiff['s] reliance was the proximate cause of their injury." *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007) (internal quotation marks omitted).

In each of the four motions to dismiss, all Defendants allege that Plaintiff's claims fail because, *inter alia*, they do not make out the requisite scienter, or state of mind to defraud, for

8

violations of Section 10(b) and Rule 10b-5.  *See* CGA Mem. at 22; Individual Defs. Mem. at 6-7; Kabani Mem. at 12-14; KSP Mem. at 12[2].

The PLSRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u4(b)(2). To qualify as a "strong inference," the suggestion of the requisite state of mind must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "Therefore, the court must ask, 'When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?'" *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The Second Circuit has explained that the requisite state of mind may be pleaded by showing "motive and opportunity" or "strong circumstantial evidence of conscious misbehavior or recklessness." *ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "The type of motive required to plead scienter 'entail[s] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Vining v. Oppenheimer Holdings, Inc.*, 2010 WL 3825722, at *6 (S.D.N.Y. Sept. 29, 2010) (alteration in original) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

---

[2] Because the Court dismisses Plaintiff's claims for failure to plead with particularity allegations of scienter, the Court does not address the other issues raised by the Defendants in their motions. The Court does however note that Plaintiff's claims appear speculative, *Iqbal*, 556 U.S. at 678, and if Plaintiff intends to amend, *see infra* Section IV, he should address the issues raised by Defendants in their motions.

A.   *Plaintiff Fails Make out an Allegation of Scienter as to CGA and the Individual Defendants*

In his Amended Complaint, Plaintiff provides three pithy paragraphs that constitute his "scienter allegations." Am. Compl. ¶¶ 78- 80. In sum, and as best the Court reads them, they allege that CGA "intentionally, knowingly, and at least recklessly" filed fraudulent financial reports, and "knew that the public documents and statements issued or disseminated in the name of CGA" "were materially false and misleading" in violation of securities laws. Am. Compl. ¶¶ 78-79. In another part of his Amended Complaint, Plaintiff claims his observation and detailing of a lack of activity at the Gufeng facility shows that CGA "intentionally" and "blatantly fabricated" "revenue data *with scienter*." Am. Compl. ¶ 42 (emphasis added).

Apparently aware that an allegation of scienter is required, Plaintiff simply makes threadbare assertions using the label of scienter. But such a formulaic recitation is not sufficient to plausibly state a claim. *See Iqbal*, 556 U.S. at 678; *see also Meridian Horizon Fund, LP*, *v. KPMG (Cayman)*, 487 F. App'x 636, 639 (2d Cir. 2012). At no point in his Amended Complaint does Plaintiff explain why or for what purpose CGA would file fraudulent financial reports except to say that doing so was "an effort to maintain artificially high market prices for CGA common stock." Am. Compl. ¶ 90. A motive for purposes of scienter entails concrete benefits that would accrue. A mere "motive to maintain the appearance of corporate profitability . . . will naturally involve benefit to a corporation, but does not entail 'concrete benefits.'" *Chill v. GE*, 101 F.3d 263, 268 (2d Cir. 1996). "[I]f scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Id.* (quoting *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *see also Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 81 n.67 (2d

2021) (stating "ordinary profit motive[s]' . . . cannot alone establish a strong inference of scienter.").

Where, as here, a plaintiff does not establish motive and opportunity, he may rely on the "strong circumstantial evidence prong" of the scienter test. *See ASTI Commc'ns, Inc.*, 493 F.3d at 99. However, "the strength of the circumstantial allegations must be correspondingly greater if there is no motive." *ECA*, 553 F.3d at 198-199 (internal quotation marks omitted). The Second Circuit has identified four circumstances that may give rise to a strong inference of scienter. The complaint must sufficiently allege that the defendants: "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Id.* at 199.

As stated, Plaintiff does not allege with particularity how any Defendant personally benefitted from the purported fraud. Plaintiff further does not explain how CGA or the Individual Defendants engaged in illegal behavior, except to say that the annual and quarterly reports violated federal securities laws. Such conclusory assertions cannot generate an inference of conscious misbehavior or recklessness. *See Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 352-53 (2d Cir. 2020) (plaintiff must offer non-conclusory allegations that defendant actually intended to defraud, not just that allegedly misleading statements were negligent). With respect to the remaining two factors, CGA correctly points out that CGA "repeatedly disclosed declining profitability and several losses." CGA Mem. at 23. In its 2019 Annual Report, CGA disclosed that its gross profit had declined by around 10% in 2017, 2018, and 2019, and continuously declined year-over-year since 2015. 2019 Annual Report [ECF No. 67-6] at 48, 55. Plaintiff himself acknowledges that in an "annual report," CGA "reported a loss and it is indeed[ the case]

11

that they did get a huge loss." Am. Compl. ¶ 51. Such disclosures weaken any inference of scienter. *See Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) ("allegation that defendants behaved recklessly is weakened by their disclosure of certain financial problems."); *see also Lehmann*, 830 F. App'x at 352-53 (plaintiff's allegations of conscious misbehavior or recklessness must rise to the level of actual intent).

Plaintiff fails to resuscitate his scienter allegations in his opposition. Plaintiff argues he has established scienter because he "successfully demonstrated that [] CGA and [the Individual Defendants] had [a] strong motive" to file falsified reports "so that they can move the money from investors to their own coffer." Pl. Opp. at 27. However, Plaintiff fails to explain in non-conclusory fashion *how* Defendants benefitted beyond saying that they did so. Motive may be shown where "corporate insiders are alleged to have misrepresented to the public material facts about the corporation's performance or prospects in order to keep the stock price artificially high while they sold their own shares at a profit." *South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108 (2d Cir. 2009). But Plaintiff does not claim that any Defendant sold shares, or ever took advantage of the purportedly inflated stock price. Absent more, Plaintiff cannot establish motive.

### B.     *Plaintiff Fails to Sufficiently Allege Scienter as to the Auditor Defendants*

Plaintiff also fails to plead scienter as to the Auditor Defendants.[3] "The pleading requirements for auditor scienter are particularly stringent." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 426 (S.D.N.Y. 2014); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 WL 3758085, at *15 (S.D.N.Y. Aug. 29, 2012)

---

[3] While Plaintiff only brings Section 10A claims against the Auditor Defendants, discussed *infra* Section III, the Court construes his *pro se* pleadings as additionally alleging violations under Section 10(b) and Rule 10b-5.

12

("Courts in this District have repeatedly recognized [that] '[t]he standard for pleading auditor scienter is demanding.'"). "An accountant's alleged misconduct must approximate an actual intent to aid in the fraud being perpetrated by the audited company." *See Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also South Cherry St., LLC*, 573 F.3d at 110.

Plaintiff must show that the Auditor Defendants had the motive and opportunity to perpetrate fraud, or allege strong circumstantial evidence of conscious misbehavior or recklessness to establish scienter. *See Iowa Pub. Emp. Ret. Sys.*, 919 F. Supp. 2d at 331. As to motive, Plaintiff claims that the Auditor Defendants "chose to help CGA and [I]ndividual Defendants [in] committing [the] fraudulent scheme to get [a]uditing income." Am. Compl. ¶ 61. Later, Plaintiff states that the Auditor Defendants "cooperat[ed] with CGA and [I]ndiviudal Defendants' fraud and got rewarded by [an] audit fee." Am. Compl. ¶ 77. Such allegations are insufficient as a matter of law to establish motive. The "mere receipt of compensation and the maintenance of a profitable professional business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter." *Iowa Pub. Emp. Ret. Sys.*, 919 F. Supp. 2d at 333.

As to allegations of misbehavior or recklessness, Plaintiff again misses the mark. "Recklessness in the securities fraud context is far more than a misapplication of accounting principles." *Id.* (internal quotation marks omitted). Essentially, an auditor's conduct "must reflect accounting judgments that no reasonable accountant would have made . . . if confronted with the same facts." *Id.* Plaintiff broadly claims that the Auditor Defendants "covered up" and "supported" the underlying fraud. *See* Am. Compl. ¶¶ 61, 70. But nowhere does Plaintiff allege that any of the Auditor Defendants knew or should have known that the underlying financial

13

information was fraudulent, or were otherwise aware that CGA allegedly was manipulating its data.  "Notably, if an auditor is 'not aware of facts indicating that a transaction is suspicious, or part of a fraud, the auditor's failure to investigate the transaction—even if negligent—does not provide a basis for a fraud claim." *Iowa Pub. Emp. Ret. Sys.*, 919 F. Supp. 2d at 332.  Plaintiff rhetorically asks, with no factual allegations to support his speculation, "[w]hy did [the] Auditor Defendants [not] examine the evidence sufficiently," or "not seriously check the bank statement." Am. Compl. ¶ 77.  Even accepting Plaintiffs' speculation as true, merely having access to the information does not necessarily mean that the Auditor Defendants were aware of any purported misrepresentations. *Iowa Pub. Emp. Ret. Sys.*, 919 F. Supp. 2d at 332 (explaining "auditor *access* is not tantamount to auditor *awareness*"); *In re Tremont Secs. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010).  Absent awareness of the purported fraud, Plaintiff cannot establish that a reasonable auditor in the same position would have acted differently.  Accordingly, the Court cannot plausibly infer that the Auditor Defendants acted recklessly or that Plaintiff makes out allegations of conscious misbehavior sufficient to satisfy the scienter element of any claim against the Auditor Defendants.

*   *   *

In sum, Plaintiff does not establish that any Defendant had a "motive and opportunity" or provide "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*  Plaintiff thus does not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u4(b)(2).  Accordingly, Plaintiff has not adequately pleaded scienter, and the Section 10(b) and Rule 10b-5 claims must be dismissed.  Having found that Plaintiff does not adequately plead scienter, the Court does not reach the issue

of whether Plaintiff has adequately pleaded any misrepresentations. *See In re DNTW Chartered Accountants Sec. Litig.*, 96 F. Supp. 3d 155, 169 n.4 (S.D.N.Y. 2015).

## II. PLAINTIFF'S SECTION 20(A) CLAIM CANNOT BE SUSTAINED ABSENT A PRIMARY VIOLATION OF SECTION 10(B) OR RULE 10B-5

Plaintiff separately brings a Section 20(a) claim against the Individual Defendants. In essence, Section 20(a) provides liability for individuals who controlled an entity that itself is liable for violating a provision of the Exchange Act. *See* 15 U.S.C. § 78t(a). "It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation." *Fries v. Northern Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 723 (S.D.N.Y. 2018); *see also 380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 231 (S.D.N.Y. 2008) ("Because Plaintiffs have failed to establish a primary violation of Section 10(b) and Rule 10b-5 . . . due to inadequate pleading of scienter, Plaintiffs' Section 20(a) claim against [defendants] must be dismissed as well."). Because Plaintiff's allegation that the Individual Defendants and CGA violated Section 10(b) and Rule 10b-5 fail for lack of scienter, there can be no violation of Section 20(a). The Court therefore dismisses Plaintiff's Section 20(a) claims.

## III. THERE IS NO PRIVATE CAUSE OF ACTION UNDER SECTION 10A

Plaintiff asserts a Section 10A(a) claim against the Auditor Defendants and Mr. Daqing under 15 U.S.C. § 78j-1. That provision of the Exchange Act directs that audits "by a registered public accounting firm shall include, in accordance with generally accepted auditing standards, . . . procedures designed to provide reasonable assurance of detecting illegal acts that would have a direct and material effect on the determination of financial statement amounts." 15 U.S.C. § 78j-1.

The Court finds no support for the proposition that Section 10A creates a private right of action. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 300 (15 U.S.C. § 78j-1

does not create private right of action) (Thomas, J. concurring). The PSLRA, which amended the relevant provisions of the Exchange Act, expressly states "[n]othing in this Act . . . shall be deemed to create or ratify any implied right of action." Act of Dec. 22, 1995, Pub. L. No. 104-67, tit. II, § 203, 109 Stat. 762 (Notes on 15 U.S.C. § 78j-1). While not a question of first impression, few courts have addressed whether Section 10A creates a private cause of action. *See Macriora v. PMB Helin Donovan LLP*, 2016 U.S. LEXIS 94852, at *9 (W.D. Wash. July 20, 2016) (describing the issue of a private cause of action under Section 10A as a "matter of first impression," "agreeing with Defendants that the plain language of the statute indicates a clear intent to preclude a private cause of action" and "declin[ing] to create a private cause of action under Section 10A."); *see also Batchelor v. Deloitte & Touche, LLP*, 2009 WL 1255449, at *5 (S.D. Fla. Apr. 27, 2009) ("only the SEC … has authority to enforce [Section 10A]."). Plaintiff appears to concede that there is no support for a private right of action under Section 10A. *See* Pl. Opp. to KSP at 5 (stating that he "checked many [] case[s], but [it is] hard to find a private action with a count of 10A."). Having found no support for such a claim, and mindful that the plain language of the statute indicates that there is no private right of action, the Court concludes there is no private right of action under Section 10A. Accordingly, the Section 10A claims against the Auditor Defendants and Mr. Daqing are dismissed.

## IV. LEAVE TO AMEND

While Plaintiff does not expressly ask for leave, he alludes to changes he would make if allowed to further amend his complaint. *See* Pl. Opp. to KSP at 5 (stating that he would add additional counts "besides 10A" as to the Auditor Defendants if he sought leave); Pl. Opp. to Individual Defs. at 16-17 (stating that Plaintiff would "willing[ly] amend" if the "Court order[ed] Plaintiff to partially amend the [Amended Complaint] relevant to 10A."). To the extent that Plaintiff requests leave to amend again to bring a claim under Section 10A, doing so would be

futile where Section 10A does not create a private right of action.  *See Maciora*, 2016 U.S. Dist. LEXIS 94852, at *27-28.

Because leave to amend should be freely given "when justice so requires," the Court grants Plaintiff leave to amend with respect to his other allegations.  Fed. R. Civ. P. 15(a)(2); *see also* Pl. Opp. to Kabani ("Plaintiff will follow Court's decision and [is] ready to amend [the Amended Complaint] anytime.").  If Plaintiff chooses to amend, Plaintiff must address the deficiencies noted herein (and in the motions to dismiss), if he is able to do so.  Any further amended complaint must be filed on or before October 29, 2021.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED** without prejudice.  If Plaintiff does not file a Second Amended Complaint on or before **October 29, 2021**, today's dismissal shall be with prejudice.

**SO ORDERED.**

Date:   September 30, 2021
        New York, NY

_____
**MARY KAY VYSKOCIL
United States District Judge**