USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/30/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GANG CHEN,

           Plaintiff,

-against-

CHINA GREEN AGRICULTURE INC., ZHUOYO LI, YONGCHENG YANG, DAQING ZHU, KABANI & COMPANY, INC., KSP GROUP, INC., ABDUL HAMID KABANI, JASLYN HUYNH SELLERS, AMERICAN CORPORATE LEARNING ACADEMY, SHAHNAZ KABANI, and YIRU SHI,

           Defendants.

1:20-cv-09232 (MKV)

**ORDER GRANTING MOTIONS TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Gang Chen brought this *pro se* action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Plaintiff alleges that China Green Agriculture Inc. ("China Green"), several of its officers, and various auditors (collectively, "Defendants"), engaged in a securities fraud scheme that, when revealed to the investing public, caused China Green's inflated stock price to decline and, as a corollary, caused Plaintiff to suffer severe losses when he sold his stock in the company. Defendants seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motions are GRANTED.

1

**BACKGROUND**

The following facts are drawn from Plaintiff's Second Amended Complaint and are assumed true "for the purposes of a motion to dismiss." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

China Green is a Nevada-incorporated company, trading on the New York Stock Exchange, which develops, manufactures, and distributes fertilizers through a variety of wholly-owned Chinese subsidiaries. SAC ¶¶ 8-9. Plaintiff began investing in China Green nearly five years ago, attracted by the seemingly strong financial data contained in the quarterly and annual reports China Green submitted to the Securities and Exchange Commission. SAC ¶¶ 1, 7, 139.

Plaintiff became "skeptical," however, when the quarterly and annual reports remained positive while "the stock price . . . kept falling." SAC ¶ 141. So, Plaintiff flew to China to do some reconnaissance on one of China Green's main factories. SAC ¶¶ 24-26, 141-42. During this trip, Plaintiff observed what he believed to be surprisingly little activity at the factory, given the amount of fertilizer that China Green purportedly sold each year. SAC ¶¶ 24-26. With his doubts deepening, Plaintiff recruited a friend to stakeout the factory for several hours, as well as "a local observer who was able to watch the factory all day and every day." SAC ¶¶ 27-28. Plaintiff also spoke with "four . . . former and current [factory] workers including a bookkeeper." SAC ¶ 29.

Plaintiff then compared the information gathered from his independent investigation with the figures presented in various reports issued by China Green. Through a complicated series of calculations, using "back-of-the-napkin" math, Plaintiff concluded that things did not add up. SAC ¶ 41; *see also* SAC ¶¶ 42-47. In particular, Plaintiff determined that China Green would have needed "at least 75 trucks" to pass through the entrance of its factory each day in order to transport the amount of fertilizer and other products that it purportedly sold each year. SAC

¶ 33. Plaintiff alleges that China Green could not possibly have met this quota because, by his estimation, fewer than two trucks left the facility each day. SAC ¶¶ 33-34. Plaintiff also calculated based on various China Green disclosures that the factory he visited purportedly held over 450,000 tons of inventory at the end of June 2019. SAC ¶ 41-42. Plaintiff concluded that this disclosure must be false, since the facility was far too small to fit such a high volume of materials—a conclusion that once again relied upon complex calculations, as well as an image from Google Maps. SAC ¶¶ 44-45. Plaintiff points to these supposedly stark discrepancies as evidence that China Green had released false or misleading statements regarding its revenue and its inventory. SAC ¶¶ 23, 36, 50, 138.

But Plaintiff's investigation was not limited to on-site visits. Plaintiff also spoke with an undisclosed informant working for the China State Administration of Taxation in an effort to verify China Green's tax disclosures. SAC ¶ 52-54. This investigation led Plaintiff to believe that China Green "forged related income tax purported[ly] paid in China" so that it could, among other things, "coordinate [its tax disclosures] with the fake numbers of income." SAC ¶¶ 50, 57. Plaintiff also did a deep dive into China Green's reported cash and "cash equivalents." SAC ¶ 63. After allegedly discovering that China Green had been selling common shares for less than "book value per share," Plaintiff concluded that China Green had no "cash and cash equivalent" and "desperately needed . . . real cash." SAC ¶¶ 65, 75.

Plaintiff contends that China Green was able to keep its fraudulent scheme from investors by, among other things, issuing a misleading statement regarding the independence of its auditing company. Specifically, Plaintiff alleges that on April 20, 2017, China Green filed a Form 8-K which disclosed that Kabani & Company, Inc. ("K&C") "resigned as independent registered public accounting firm for [China Green]," and that China Green had engaged KSP

Group, Inc. ("KSP") as its new "independent registered public accounting firm for the fiscal year ending June 30, 2017." SAC ¶ 81. Plaintiff contends that this statement misled investors by making it seem like "the old auditor K&C and new auditor KSP are two different companies" when "they were not" because both "were controlled and managed by the same person: [Abdul Hamid] Kabani." SAC ¶ 82.

Plaintiff claims that when China Green's "misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of [China Green]'s securities fell," resulting in Plaintiff suffering approximately 1.25 million in losses when he sold his stock. SAC ¶ 139.

## PROCEDURAL HISTORY

Plaintiff initiated this suit on June 5, 2020 in the Southern District of Florida. [ECF No. 1]. In so doing, Plaintiff named the following defendants: China Green; Zhuoyu Li, who had been President of China Green since 2016, and CEO and Chairman since 2017; and Yongcheng Yang, who had been Vice President of Finance of China Green since 2016, and Chief Financial Officer since 2017. SAC ¶¶ 8-9; ECF No. 1. On November 2, 2020, Judge Kenneth Marra *sua sponte* transferred this matter to the Southern District of New York. [ECF No. 34]. Defendants China Green, Li, and Yang then sought leave to move to dismiss the action. [ECF No. 55].

At a conference to discuss the proposed motion, Plaintiff requested leave to amend his complaint in response to the arguments the defendants had raised, which the Court granted. *See id.* Thereafter, Plaintiff filed a First Amended Complaint ("FAC"), which, among other things, added the following defendants: K&C; KSP; Abdul Hamid Kabani ("Kabani"); Jaslyn Seller, who was KSP's Audit Director; and Daqing Zhu, who had been the Chairman of the Audit Committee of the China Green Board since 2017. [ECF No. 57]. Defendants moved to dismiss

4

the FAC for failure to state a claim upon which relief could be granted. [ECF Nos. 66, 95, 102, 107].

On September 30, 2021, the Court granted the motions to dismiss the FAC, concluding, in relevant part, that Plaintiff had not alleged facts giving rise to the strong inference that any defendant acted with the requisite intent sufficient to state a securities fraud claim. [ECF No. 113 at 8, 15] (the "September 30 Opinion"). In light of Plaintiff's *pro se* status, the Court granted Plaintiff leave to amend a second time to address the deficiencies the Court identified in its Opinion, and to address other arguments the Parties had raised which the Court did not reach. September 30 Opinion at 9 n.2, 16-17. Plaintiff then filed the operative Second Amended Complaint ("SAC"), which added Shahnaz Kabani ("Shahnaz") as a defendant, along with the American Corporate Learning Academy ("ACLA"), which allegedly is a "shell company" created by Kabani and Shahnaz to control KSP. [ECF No. 115].

Pending before the Court are three separate motions to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted: a motion by China Green, Li, Yang, and Zhu ([ECF No. 134]; [ECF No. 135]); a motion by KSP, Sellers, and Shi ([ECF No. 138]; [ECF No. 139]); and a motion by ACLA, K&C, Kabani, and Shahnaz ([ECF No. 137]; [ECF No. 140] ("Kabani Mem.")). Plaintiff filed an omnibus opposition to the defendants' motions [ECF No. 141] ("Opp."), and the defendants filed separate replies in further support of their respective motions. [ECF No. 144]; [ECF No. 145]; [ECF No. 143].

## LEGAL STANDARDS

I. THE APPLICABLE PLEADING STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Securities fraud claims are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).  Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting" the securities fraud violation.  Fed. R. Civ. P. 9(b).  To meet this standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Wood ex rel. United States v. Applied Research Assocs., Inc.*, 328 F. App'x. 744, 747 (2d Cir. 2009) (internal quotation marks omitted).  For that reason, "conclusory allegations that [a] defendant's conduct was fraudulent or deceptive are not enough." *CreditSights, Inc. v. Ciasullo*, 2008 WL 4185737, at *9 (S.D.N.Y. Sept. 5, 2008) (quoting *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982)).

Additionally, the PSLRA requires a plaintiff who alleges securities fraud predicated on misrepresentations or omissions of material fact to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  The PSLRA also requires that in any securities fraud action "the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive,

manipulate or defraud.'" *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

## II. PLAINTIFF'S *PRO SE* STATUS

As the Court did in connection with its September 30 Opinion, the Court again construes Plaintiff's submissions liberally and interprets them to raise the strongest claims that they suggest. *See* September 30 Opinion at 6 (citing *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)).[1] However, the Court cannot absolutely excuse Plaintiff by virtue of his *pro se* status from the pleading requirements of the Federal Rules of Civil Procedure. The "liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d, 749, 758 (S.D.N.Y. 2015). Plaintiff's Second Amended Complaint must comply both with Federal Rule of Civil Procedure 8, and, as applicable in this securities fraud case, the heightened pleading standard for fraud based claims under Federal Rule of Civil Procedure 9(b). *See id.* (Rule 8); *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241 (S.D.N.Y. 2013) ("While the pleadings of a *pro se* plaintiff must be construed liberally, a *pro se* complaint must still meet the particularity requirements of Rule 9(b).").

---

[1] In his Opposition to Defendants' motions to dismiss, Plaintiff argues that the Court did not construe his pleadings liberally and afford him leniency as a *pro se* plaintiff, and that the Court did not "patiently read[] [his] proceeding completely and consider all of the facts [he] provided." Opp. at 7. This is just not so. *See* September 30 Opinion at 6-7 (describing that the Court is "required to afford" Plaintiff "leniency"); *id.* at 12 n.3 (construing Plaintiff's *pro se* pleadings as alleging an additional cause of action); *id.* at 10 (reading Plaintiff's allegations as "best" the Court could understand them). And to the extent Plaintiff's Opposition could be construed as seeking reconsideration of the Court's September 30 Opinion, such a request is denied as untimely, as the Opposition was filed months past the fourteen-day deadline imposed by Local Civil Rule 6.3. Plaintiff's "*pro se* status does not exempt him from complying with the deadline imposed by the rule." *Darnley v. Ameriquest Mortg. Co.*, No. 06-cv-4265, 2020 WL 1536316, at *2 (E.D.N.Y. Mar. 30, 2020).

**DISCUSSION**

I.       **SECTION 10(B) AND RULE 10B-5 CLAIMS**

A plaintiff alleging a violation of Section 10(b) and Rule 10b-5 must *prima facie* allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Carpenters Pension Trust Fund v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). Failure to establish a single element is fatal to any claim. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91 (1994).

Plaintiff contends that Defendants made false and misleading statements relating to China Green's revenue, inventory, tax payments, cash and cash equivalents, and auditing process. These difficult to decipher allegations, which rely on a series of undisclosed informants and speculative calculations, are dubious at best. Plaintiff's allegations of scienter are similarly scanty and convoluted, suffering from many of the same problems that proved fatal to the First Amended Complaint. *See* September 30 Opinion at 10-14. But we need not untangle these webs because the Second Amended Complaint clearly fails due to its complete failure plausibly to allege loss causation.

Loss causation is the proximate "causal connection between the material misrepresentation and the loss" allegedly suffered by Plaintiff. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (citing 15 U.S.C. § 78u-4(b)(4)). Accordingly, to state a claim for securities fraud, a complaint must allege that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 179 (2d Cir. 2020) (internal quotation marks, citation, and emphasis omitted). A plaintiff may plead loss causation either by alleging "(a) the existence of cause-in-fact on the ground that the

8

market reacted negatively to a corrective disclosure of the fraud; or (b) that that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014) (internal quotation marks and citation omitted).

Plaintiff claims that his loss resulted from a corrective disclosure, rather than from the materialization of a risk. Specifically, in the sole allegation addressed to the loss causation issue, Plaintiff alleges that "[w]hen Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of [China Green]'s securities fell." SAC ¶ 139. But Plaintiff does not explain how or when the corrective information was disclosed to the market. Plaintiff does not allege that he revealed the results of his reconnaissance to the public, or that there were any press releases that would cause the losses Plaintiff describes. And rather than claim that China Green released corrective information in any of its later reports, Plaintiff asserts that since the first quarterly report he read in 2017, he has read a total of eleven quarterly reports, "[m]ost" of which had "similar[ly] attractive financial data." SAC ¶ 139.

Even if Plaintiff had alleged a corrective disclosure, he still would have failed to plausibly plead loss causation because he never identified when the disclosure happened, how or by whom it was made, what effect it had on the market, or when he sold his stock in relation to that disclosure. As to the effect on the market, Plaintiff alleges that China Green's stock was in decline when he launched his investigation, and when the alleged misrepresentations were supposedly concealed. SAC ¶ 142. He makes no allegation that this trend was accelerated or otherwise affected on any date by the release of corrective information. And as to his selling dates, Plaintiff provides that after discovering the false and misleading nature of the relevant statements, he "gradually reduced [his] holding[s]" in China Green, which resulted in "damages

over $1.25 million" dollars.  SAC ¶ 142.  But Plaintiff fails to specifically allege when these various sales happened or at what price.  SAC ¶ 142.

Without further information it is impossible to draw a causal connection between any alleged misstatement or omission and the losses Plaintiff contends he suffered.  Accordingly, Plaintiff fails to adequately allege loss causation sufficiently to state a claim upon which relief can be granted.  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) ("[I]f the plaintiff fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered, a fraud claim will not lie.").

## II.    SECTION 20(A) CLAIMS

"To state a claim under Sections 20(a) and 20A of the Exchange Act, a plaintiff must allege a primary violation, such as one under Section 10(b) and Rule 10b-5."  *Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022).  Because Plaintiff fails to allege a primary violation of the Exchange Act, his claims under Section 20(a) fail to state a claim upon which relief can be granted, and are accordingly dismissed.  *Id.* at 356-57; *Fries v. Northern Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 723 (S.D.N.Y. 2018) ("It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation.").

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED**.  The Clerk of the Court respectfully is requested to terminate the motions at ECF Nos. 134, 137, 138.

The PSLRA mandates that, at the end of any private securities action, the district court must "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)."  15 U.S.C. § 78u-4(c)(1).  In their memorandum, Defendants Kabani, K&C, Shahnaz, and the ACLA state that they will seek attorneys' fees pursuant to Section 78u-4(c)(1) as a compensable sanction.  Kabani Mem. at

16.  Any application with respect to fees shall be made on or before September 30, 2022.  If any application for attorneys' fees is filed, Plaintiff is directed to file any opposition to the application on or before October 31, 2022.  The Court will make the required findings with respect to compliance with Rule 11 after the October 31 deadline for briefing on any fee application.

**SO ORDERED.**

Date:   **August 30, 2022**
        **New York, NY**

_____
**MARY KAY VYSKOCIL
United States District Judge**